458 So.2d 81 (1984)
In re the Marriage of David HOLLAND, Appellant,
v.
Debra Ann HOLLAND, Appellee.
No. 83-1134.
District Court of Appeal of Florida, Fifth District.
November 1, 1984.
Tim Keyser, Interlachen, for appellant.
No appearance for appellee.
STROKER, R.J., Associate Judge.
This is an appeal from a Final Judgment of Dissolution of Marriage which, in pertinent part, awarded the care, custody and control of the parties' minor children to the mother. Prior to the final hearing the parties filed "Supplemental Marital Settlement Stipulations" which provided for full retention by both parents of their parental rights and responsibilities. At the hearing, counsel for the appellee/wife stated to the Court that she is "unaware of any reason that shared parental responsibility would be detrimental to the children in this case."
*82 After hearing argument from counsel, the Trial Court declined to enter a shared parental responsibility order and awarded care, custody and control of the minor children to the wife. This decision was not based on a finding that shared parental responsibility would be detrimental to the children but on the general proposition that one of the parents must be possessed of the ultimate decision making authority on matters concerning the children. In all other respects the Final Judgment of Dissolution incorporated the stipulations of the parties concerning shared parental responsibility and frequent and continuing contact by the father.
As this Court recently noted in Elebash v. Elebash, 450 So.2d 1268 (Fla. 5th DCA 1984), the trial court does have the authority to decline to follow a settlement agreement between the parties relating to child custody, visitation and support. Sections 61.13(2)(b)2.a., Florida Statutes (Supp. 1982) expressly provides that the court may grant to one party the ultimate responsibility over specific aspects of the child's welfare including primary residence, education, medical care and others. It is clear, however, that the law contemplates such decisions being made on a case-by-case basis after an evidentiary finding concerning the best interest of the child. No such finding was made in this case. The trial court said: "I will not enter a shared parental responsibility order ..." and explained its refusal to enter an order of shared parental responsibility by stating, in part:
... the Legislature has no power under the Constitution of the State of Florida to mandate my use of my judicial discretion... . I find that the right to make the ultimate decision concerning the care of the child, medical consents, school consents, in the event that the parties are unable to reach an agreement, must ultimately rest with one person; and for that reason I do not enter an order of the type you seek to enter... . what I will do, I will enter an order awarding the primary custody to one parent. I will then enter all of the remaining paragraphs . .. and in every respect except that of having the ultimate responsibility rest with one person, it would read identically with the shared parental responsibility provisions of the Legislative act.
Section 61.13(2)(b)2, Florida Statutes (Supp. 1982) states:
The Court shall order that the parental responsibility for a minor child be shared by both parents unless the court finds that shared parental responsibility would be detrimental to the child. If the Court determines that shared parental responsibility would be detrimental to the child, the Court may order sole parental responsibility. (Emphasis Added).
The decision of the lower Court is reversed and the cause remanded to permit the trial court to make a finding on the question of whether or not shared parental responsibility would be detrimental to the children in this case.
ORFINGER, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
The problem in this case is solely one of words, context, semantics, and philosophy, not judicial error.
Many persons apparently believe that under section 61.13, Florida Statutes, "shared parental responsibility" is an antonym or the antithesis of child custody and that the statute has abolished the concept of custody. Those persons usually also believe (1) that unless the court first explicitly finds that shared parental responsibility would be detrimental to the child (i.e., that one parent is unfit to have custody), the court must provide that the "primary physical residence" (custody) of the child is to be shared (equally ?) between the parents by rotation or some other form of division;[1] *83 (2) that the trial court should not now refer to "custody" and may not place "custody" of the child or children with one parent; (3) that notwithstanding the trial court's opinion as to what is in the best interests of a child, the trial court is bound by any agreement the parents may make relating to the child's physical residence; and (4) that "shared parental responsibility" means that the problem as to where the children are to sleep when the parents cannot agree must be left unaddressed by the court in the original dissolution proceeding.
These are erroneous beliefs founded, in part, on desires of their advocates and, in part, on the fact that often, in times past, the parent given custody, that is, the authority to decide the place of the child's physical residence, was also given, or usurped, exclusive decision-making authority over most of the important aspects of the child's welfare. Notwithstanding, custody means merely the safekeeping of something within the personal care and control of the custodian. While in the context of child custody it necessarily connotes certain rights and duties as to matters requiring immediate, moment-to-moment decisions, it does not include exclusive decision-making authority as to major decisions relating to long range matters concerning which there is ample time to consider available alternatives, such as education, religious training, and non-emergency medical and dental care. In fact, as presently worded, section 61.13, Florida Statutes, which provides for "shared parental responsibility," refers, affirmatively and favorably, seven times to "custody." The statute refers to "child custody dispute" (§ 61.13(3)(j)); to the "custodial home" (§ 61.13(3)(e)); to the person or persons "awarded custody of the child" (§ 61.13(1)), and refers to the court "determining custody" (§ 61.13(2)(b)1.). The statute states clearly that the court "shall have jurisdiction to determine custody" (§ 61.13(2)(a)); "shall determine all matters relating to custody" (§ 61.13(2)(b)1.), and "may make such orders about what security is to be given for the care, custody, and support of the minor children" (§ 61.13(4)). The statutory term "primary physical residence" (§ 61.13(2)(b)2.a.) appears to be the equivalent of the proper meaning of the word custody, while the statutory term "sole parental responsibility" (§ 61.13(2)(b)2.b.) appears to approximate what is the erroneous concept of custody. The reciprocal or converse of the term and concept "primary physical residence" would be "secondary physical residence," which is unmentioned in the statute, but equates with the concept of parental visitation.
From the recorded dialogue between the trial judge and the father's attorney the trial judge appears to have had the correct impression of these words and terms and the father's attorney seems to have been advocating the erroneous concepts arguing that "the concept of custody is unfounded in the [shared parental responsibility] law." With this the trial judge could not agree and, after stating that he would "not enter a shared parental responsibility order" "  of the type you seek to enter," the trial judge stated, "I am a firm believer in shared parental responsibility. And I encourage the parties in every case to share the responsibilities of parents so that they do not abrogate their responsibilities to their children or the children's right to both a mother and a father." The trial judge further stated, "I concur that shared parental responsibility is a beautiful principle and I encourage it [but] I will not enter the order that you seek." The trial judge then entered the final judgment in this case with the husband's attorney saying that the "only objection to it is the one paragraph, numbered five, the first sentence, that provides for a custody award to the wife ... ." (emphasis supplied)
In defining "shared parental responsibility" section 61.13(2)(b)2.a., Florida Statutes (1983), explicitly provides in part:

In ordering shared parental responsibility, the court ... may grant to one party the ultimate responsibility over specific aspects of the child's welfare or *84 may divide those aspects between the parties based on the best interests of the child... . Such areas of responsibility may include primary physical residence, education, medical and dental care, and any other responsibilities which the court finds unique to a particular family and/or in the best interests of the child. (emphasis supplied)
Custody provisions of dissolution judgments delineating one parent responsibility as to specific decision making areas of parental responsibility are entirely consistent with this statutory definition of "shared parental responsibility." Therefore, to make specific allocations or divisions of parental responsibility as to specific items or areas of parental responsibility, including primary physical residence or "custody," does not require that the trial judge first "determine that shared parental responsibility would be detrimental to the child" as is necessary for the court to order "sole parental responsibility." See § 61.13(2)(b)2., Fla. Stat.
In the final judgment in this case, the pertinent portion of which is set forth below,[2] in view of "shared parental responsibilities" language in subparagraphs 5b. through 5f. plus the additional subparagraphs a. through c., the "care, custody and control" language in the introductory sentence, (which is the only one to which the father objects), is, in legal effect, merely duplicative of the language in subparagraph 5a. as to the children's primary residence. That was the intent and understanding of the trial judge expressed in the comments quoted in the majority opinion. If the "care, custody and control" sentence were stricken from the final judgment the legal effect of the final judgment would be unchanged. The final judgment exactly follows the "shared parental responsibility" statute in granting the primary physical residence (i.e., care, custody and control) of the children to one party and in otherwise providing that the responsibility for parental decisions will be shared by both parents. This is an order for "shared parental responsibility" as was the order in Elebash v. Elebash, 450 So.2d 1268 (Fla. 5th DCA 1984), and the order in this case should be affirmed as was the order in Elebash.
No rule of law or procedure requires that a trial court either articulate on record, or make an explicit written finding as to, every essential fact that underlies a legal conclusion and judgment in a case. In making a custody determination the trial court does not have to expressly state its factual finding that "shared parental responsibility" *85 is "detrimental to the child" nor articulate by rote that its decision as to the custody or "primary physical residence" of the children is, in the judge's opinion, "in the best interest of the children." When the evidence in a case coupled with the court's discretion supports the trial court's conclusion, appellate courts should apply the general rule that trial court determinations are presumed to be correct and assume that the trial court found the essential fact necessary to support its conclusion. In fact, an appellate decision requiring a trial judge to support his decision with factual findings is but an oblique way of not applying the general principle of law that trial court decisions are to be presumed valid and are to be affirmed if supported by facts and law even if no findings are made and even if erroneous reasons are given.[3] This principle was recently recognized by the supreme court of Florida in a domestic relations case, Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984), in which the court stated:
We are not prepared to hold, as Judge Nimmons apparently would, that trial judges must support their decisions with factual findings. This would be contrary to the well-established rule that trial court decisions are presumptively valid and should be affirmed, if correct, regardless of whether the reasons advanced are erroneous.
The problem here is that the trial court expressed, emphatically and, unfortunately, on the record[4] his rejection of the husband's attorney's erroneous interpretation of the legislature's intent in passing the shared parental responsibility law. Hopefully the trial judge in this case and others will understand that this case is being reversed because of his comments and not because of his improper interpretation of the shared parental responsibility statute.
NOTES
[1] Such was the apparent understanding of the trial judge whose action was reversed in Strickland v. Wedekind, 436 So.2d 250 (Fla. 5th DCA 1983), in changing custody from the father to the mother not on the basis of a substantial material change in circumstances but merely because the shared parental responsibility statute had been enacted.
[2] Paragraph 5 of the Final Judgment of Dissolution of Marriage relates to child custody and provides as follows:

The care, custody and control of the minor children is awarded to the Wife. (emphasis supplied) Both parents shall confer as often as necessary to afford each opportunities for participation in major decisions affecting the welfare of the children.
a. The primary residence of the children shall be in the home of the mother as long as it is located within Putnam County, Florida.
b. The father shall have frequent and continuing contact with the minor children.
c. The parties shall share all expenses from contact and visitation including travel, child care, entertainment, recreation, and pOrsonal [sic] needs.
d. The parent with whom the children reside primarily during most of the school year shall have the right to claim the children as dependents for tax purposes.
e. In a medical emergency either parent may seek reasonable care without the necessity of consent from the other.
f. Each parent shall act in good faith to encourage unhampered contact and access between the children and the other parent in order to foster love, respect and affection between the children and the other parent. Neither parent shall do anything to estrange, damage or impair the natural development of a parent-child relationship. At all times, each parent should treat the other with civility in the presence of the children.
Other provisions regarding the minor children are as follows:
a. Each party shall promptly notify the other of any serious illness, accident, or trauma affecting the children.
b. The parties shall not attempt to alienate the affection of the children, nor permit any other person to do so.
c. The parties shall consult and confer regarding all important health and education matters concerning the children.
[The emphasized sentence is the only one to which the father's attorney objected.]
[3] Many steps in the reasoning of the trial judge may be defective and still his conclusion be correct, and the judgment may be affirmed upon a theory of the case which did not occur to the court that rendered it. Justice Bleckley of Georgia was the first to see the analogy of this legal concept to some lines written by Oliver Goldsmith (1728-1774) in a poem entitled Retaliation [1774], lines 45-48:

The pupil of impulse, it forc'd him along, His conduct still right, with his argument wrong;
Still aiming at honour, yet fearing to roam, The coachman was tipsy, the chariot drove home."
Lee v. Porter, 63 Ga. 345 (1879), per Bleckley, J., quoted in Office Boy's Digest 22 (B. Milburn ed. 1904). See also Carraway v. Armour and Company, 156 So.2d 494, 497 (Fla. 1963). For this reason in some legal circles this rule of law is known as the "tipsy coachman" rule.
[4] This court cannot be sure that the trial judge did not state his ultimate findings of fact at the evidentiary hearing relating to the dissolution and child custody determination because a record of that hearing is not made a part of the record on appeal which consists only of the final judgment and a court reporter transcript of the attorneys' argument before, and with, the trial judge when the attorneys presented a proposed final judgment to the trial judge.